# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **MATTHEW B. HARSHBARGER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:06-00555** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the Plaintiff's Motion to Remand (Doc. No.13.) and the Defendant's Motion for Judgment on the Pleadings. (Doc. No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 4-5.)

The Plaintiff, Matthew B. Harshbarger (hereinafter referred to as "Claimant"), filed an application for DIB on February 25, 2004, alleging disability as of June 1, 2000, due to degenerative disease of the neck, chronic back pain, fibromyalgia, chronic fatigue syndrome, depression, social anxiety, insomnia, and migraines. (Tr. at 13, 24, 43-45) The claim was denied initially on May 10, 2004. (Tr. at 13, 24-27.) On June 2, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 28.) The hearing was held on November 22, 2005, before the Honorable Thomas Mancuso. (Tr. at 197-218.) By decision dated January 26, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-21.) The ALJ's decision became the final decision

of the Commissioner on May 19, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 4-8.) On July 13, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).[1] (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from

---

[1] Claimant states in his Complaint (Doc. No. 1.) that he is a resident of Clifton Forge, Allegheny County, Virginia. Proper venue under 42 U.S.C. § 405(g) is "in the district court of the United States for the judicial district in which the [claimant] resides." 42 U.S.C. § 405(g). Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, the defense of improper venue is waived where not raised. *See also*, *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960)("finding that a "defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."). Absent extraordinary circumstances, improper venue should not be raised *sua sponte* after the Defendant has effectively waived the issue. *See Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir.), *cert. denied*, 519 U.S. 930, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966)("Since the right to attack venue is personal to the parties and waivable at will, a district judge should not, in the absence of extraordinary circumstances, impose his choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue."). Defendant has not raised the defense of improper venue, and therefore, the Court finds that the defense has been effectively waived. Accordingly, the Court considers the merits of Claimant's appeal.

a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

3

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked

4

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from fibromyalgia, chronic fatigue syndrome,

---

difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

migraine headaches, and mild degenerative spondylosis with mild disc bulging, which were severe impairments. (Tr. at 15-17.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant had a residual functional capacity for light work. (Tr. at 17.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 20.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearings, the ALJ concluded that Claimant could perform jobs such as a sales attendant, mail clerk, interviewer, and assembler, at the light level of exertion. (Tr. at 20-21.) On this basis, benefits were denied. (Tr. at 20-21.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 27, 1968, and was 37 years old at the time of the administrative hearing. (Tr. at 20, 43, 201.) Claimant had at least a high school education. (Tr. at 20, 201.) In the past, he worked as an elementary school teacher, a maintenance worker, and a janitor. (Tr. at 56-63, 203-04, 215.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in not finding Claimant disabled due to fibromyalgia when he met the criteria for the disability, and (2) a conflict exists between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding the jobs identified by the VE. (Pl.'s Br. at 3-8.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 8-11.)

1. Fibromyalgia.

Claimant first argues that the ALJ erred in not finding him disabled due to fibromyalgia when he met the criteria for the disability, as indicated by Dr. Lemmer. (Pl.'s Br. at 3.) The Commissioner asserts that this argument is without merit. The Court agrees with the Commissioner. As the ALJ noted, Dr. Lemmer examined Claimant on September 28, 2005, wherein Claimant

reported symptoms or "trigger points," which Dr. Lemmer found most suggestive of fibromyalgia.[3] These symptoms included: "mild tenderness of the posterior cervical spine, mild bellies of both of the trapezius muscles, parascapular musculature, upper quadrant of the buttocks, lateral epicondyle of the elbows, anserine bursa of the knees and trochanteric region of the hips." (Tr. at 15, 164-67.) On this basis, the ALJ determined that Claimant's fibromyalgia was a severe impairment. (Tr. at 15-16.) There is no Listing for fibromyalgia under the Regulations, and therefore, the ALJ was required to determine whether Claimant's fibromyalgia was functionally limiting, and if so, to what degree. Social Security Ruling 99-2p addresses the evaluation of cases involving chronic fatigue syndrome ("CFS"). The Ruling notes that "[t]here is considerable overlap of symptoms between CFS and Fibromyalgia Syndrome (FMS)" and indicates that all five steps of the sequential analysis must be followed in determining whether the condition is disabling.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's

---

[3] In *Beahm v. Astrue*, __ F.Supp.2d __, 2007 WL 2153565 (W.D. Va. July 23, 2007), the District Court explained the "trigger point diagnostic criteria" as follows:

> The diagnosis of fibromyalgia is based on the presence of widespread pain for at least 3 months and pain (not tenderness) on digital palpation in at least 11 of 18 specific sites established in 1990 by the American College of Rheumatology. These "trigger point" sites include: *occiput* (bilateral, at the suboccipital muscle insertions); *low cervical* (bilateral, at the anterior aspects of the intertransverse spaces at C5-C7): *trapezius* (bilateral, at the midpoint of the upper border); *supraspinatus* (bilateral, at origins, above the scapula spine near the medial border); *second rib* (bilateral, at the second costochondral junctions, just lateral to the junctions on upper surfaces); *lateral epicondyle* (bilateral, 2 cm. distal to the epicondyles); *gluteal* (bilateral, in upper outer quadrants of buttocks in anterior fold of muscle); *greater trochanter* (bilateral, posterior to the trochanteric prominence); and *knee* (bilateral, at the medial fat pad proximal to the joint line). Wolfe F, *et als:* The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia. Arthritis & Rheumatism 33:160-172 (1990). *See* SSR 99-2p, n. 3

residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2004). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

Regarding Claimant's symptoms surrounding his back, the ALJ noted Claimant's history of back pain, migraine headaches, and chronic fatigue. (Tr. at 15, 87, 92-94, 98, 100, 103-105, 108,

9

116, 146.) Diagnostic testing revealed only minimal or mild findings. Specifically, an April 15, 2002, MRI Scan revealed (1) mild degenerative spondylosis of the C5-C6 level with small osteophytes extending into the neural foramina bilaterally, and (2) mild disc bulging at the C3-C4 level. (Tr. at 15, 94.) A lumbar spine MRI Scan on November 18, 2002, demonstrated (1) minimal disc displacement at L5-S1 with subtle underlying annular tear: noncompressive.; (2) Mild bilateral L4-5 facet arthropathy, and (3) no explanation for his radiculopathy mild degenerative spondylosis of C5-6. (Tr. at 15, 122.)

The ALJ also considered Claimant's complaints regarding his carpal tunnel syndrome and elbow problems. The evidence indicated that he underwent right carpal tunnel release on January 3, 2001, and left release on February 2, 2001. (Tr. at 16, 85-88, 89-91.) Following the surgery, Claimant experienced only minimal or mild puffiness and aches. (Tr. at 16, 164.) The ALJ noted Claimant's reported activities to include helping his children with their homework, cooking, cleaning, washing laundry, grocery shopping, and operating a vehicle. (Tr. at 16.) On this basis, the ALJ properly determined that Claimant's carpal tunnel syndrome did not restrict his functional abilities, and therefore, was a non-severe impairment. (Id.)

As mentioned above, Claimant was examined by Dr. Lemmer on September 28, 2005, at which time Dr. Lemmer observed clear lungs, regular heart sounds, and tenderness of the twelve trigger point areas as mentioned above. (Tr. at 15, 165.) Despite this tenderness however, Claimant had full range of motion of all joints without pain, swelling, tenderness, or deformity. (Id.) Dr. Lemmer recommended that Claimant continue his then current medication regime, undergo chiropractic manipulations, and use massage, heat, and stretching, as well an exercise program designed to gradually increase in pace. (Tr. at 15, 166.)

After summarizing the physical medical evidence of record, the ALJ then considered Claimant's testimony regarding his activities of daily living. (Tr. at 18-19.) At the hearing, Claimant testified that he assisted in the care of his children, cooked, cleaned, helped his children with their homework, shopped for groceries, drove, attended church on a regular weekly basis, paid bills, read books, watched television, occasionally ate at restaurants, and walked one third a mile a day to pick up his daughter at the bus stop. (Tr. at 205-210.)

The ALJ determined that contrary to Claimant's assertions, his chronic fatigue does not prohibit him from performing many chores on a continuing and daily basis. (Tr. at 19.) Claimant's treating physician, Dr. Judkins, did not submit a RFC assessment. (Tr. at 19.) The ALJ considered however, the May 6, 2004, state agency physician's RFC Assessment, which indicated that Claimant was capable of performing a limited range of medium level work. (Tr. at 19, 141-48.) Due to evidence submitted subsequent to this assessment, the ALJ determined that Claimant was limited to performing light work. (Tr. at 19-20.)

The ALJ properly evaluated and considered all the evidence of record in making a determination of Claimant's RFC. The Court finds, based upon the record in the instant case, that the ALJ's RFC determination was proper and in accordance with the applicable law and Regulations. The ALJ's finding that Claimant's fibromyalgia was not disabling and that Claimant could perform light work is therefore, supported by substantial evidence.

2. Conflict Between Vocational Expert Testimony and Dictionary of Occupational Titles.

Finally, Claimant argues that the ALJ's decision is not supported by substantial evidence because the Vocational Expert's testimony as to the other jobs Claimant could perform conflicts with the Dictionary of Occupational Titles ("DOT"). (Pl.'s Br. at 4-8.) The Commissioner asserts

11

that this argument is without merit. (Def.'s Br. at 9-11.)

At the administrative hearing, the ALJ inquired of the Vocational Expert what jobs an individual with Claimant's age, education, work experience, and the RFC for light work with no moderate pain and no stress. (Tr. at 216.) The ALJ responded that such a person could perform the jobs of sales attendant, mail clerk, interviewer, and assembler. (Tr. at 216-17.) The VE testified that the positions and numbers were consistent with the DOT. (Tr. at 217.) Claimant argues that the sales attendant and interviewer positions are precluded by his social phobia. (Pl.'s Br. at 5-6.) He further argues that the light sales attendant, mail clerk, interviewer, and assembler positions are precluded because they require frequent handling or reaching such as that one with carpal tunnel syndrome could not perform. (Pl.'s Br. at 6-8.)

The ALJ determined that Claimant had the residual functional capacity to perform light work, which did not require him to lift more than 20 pounds occasionally and ten pounds frequently, and stand, walk, and sit six hours in an eight-hour workday. (Tr. at 17.) The Court has determined above that the ALJ properly assessed Claimant's carpal tunnel syndrome and found that he had no functional limitations. Claimant's argument is without merit and the VE's testimony is consistent with the ALJ's assessment of Claimant's RFC and with the DOT.

The Court further finds unavailing Claimant's argument regarding his social phobia. As the ALJ found, the medical evidence demonstrated that Claimant's depression and anxiety responded well to medication and did not significantly limit his ability to function. (Tr. at 16.) The ALJ noted that on February 20, 2003, Claimant reported to his treating physician, Dr. Judkins, that his anxiety was somewhat improved with medication, although it was not completely resolved. (Tr. at 16, 103.) Claimant further reported complaints of social phobia, but that he did not have any full-blown panic

episodes and was functioning fairly well. (Id.) On January 22, 2004, Claimant reported to Dr. Judkins, that he was not taking the prescribed medications for depression and anxiety. (Tr. at 16, 100.) Rather, he was reportedly taking St. John's Wort which was moderately helpful. (Id.) On April 26, 2004, Dr. Michels, M.D., noted no complaints of anxiety or social phobia on consultative examination. (Tr. at 136-40.) At that time, Dr. Michels opined that Claimant's depression was improved and assessed a GAF of 60-65.[4] (Tr. at 140.)

Based on the foregoing, the Court finds that the evidence does not support any functional limitations from Claimant's mental impairments, including social phobia, so as to preclude him from performing the jobs identified by the VE. There being at least three jobs that are consistent with the VE testimony and the Claimant's RFC, the Court does not address Claimant's arguments regarding the assembler position. Thus, the sales attendant, mail clerk, and interviewer positions meet the burden for the Commissioner, even if no assembler positions can be identified. U.S. Department of Labor, Dictionary of Occupational Titles (DOT) § 323.687-014 (4th ed. 1991). As the Fourth Circuit has indicated that as few as 110 jobs may constitute a significant number of jobs for purposes of the burden of proof in these cases, see Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979), one position is enough to constitute a significant number of jobs even if the other positions conflict with the VE's testimony. Accordingly, Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994). A GAF of 60-70 indicates that the person has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, having some meaningful interpersonal relationships. *Id.*

Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion to Remand (Doc. No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 28, 2007.

R. Clarke VanDervort
United States Magistrate Judge